The Kansas City, St. Louis & Chicago Railroad Company v. Farrell.

THE KANSAS CITY, ST. LOUIS & CHICAGO RAILROAD COMPANY, *Appellant*, v. FARRELL.

1. **Roads**: DAMAGES FOR OBSTRUCTIONS. Where adjoining proprietors by agreement closed a dedicated highway, and in place of it opened a road upon another site; *Held*, that whether the road so opened was a public highway or a private right of way, they and those claiming under them had such an interest in it as entitled them to recover damages from a railroad company crossing it in such a manner as to obstruct its free use.

2. **Instructions**. This court cannot reverse for failure to give an instruction, however correctly it may declare the law, where there is no evidence preserved in the record to support it; nor on the other hand will it reverse for the giving of an instruction which, because of the absence of such evidence, could not have harmed the appellant.

3. **Admissions, as Evidence**: COMPROMISE. Admissions made by a party to a controversy to a third person under the impression that he is the representative of the adverse party and is endeavoring to effect a compromise of the controversy, are not admissible in evidence against the party making them, though the impression be an erroneous one.

4. **Damages Voluntarily Incurred**. A railway company being about to erect a bridge over its road at a road-crossing, the present plaintiff who was interested in the road, objected, and requested that it make instead a grade-crossing. Afterward he changed his mind and when the grade-crossing was half made demanded a bridge, which the company refused to build. In an action against the company; *Held*, that the plaintiff could not recover the additional damage resulting to him in consequence of the company having made a grade-crossing instead of a bridge.

*Appeal from Jackson Circuit Court.*—HON. S. H. WOODSON, Judge.

REVERSED.

184    SUPREME COURT OF MISSOURI,

The Kansas City, St. Louis & Chicago Railroad Company v. Farrell.

*Gates & Wallace* for appellant.

If there are peculiar benefits, which defendants' land derives from the road, then certainly they should be considered, although some of his neighbors, whose lands are also taken, should likewise be benefited; and the rule is thus explained by the first instruction asked for by plaintiff, and which the court refused to give. *Garnett v. St. Louis,* 25 Mo. 505; *L. & F. P. R. Co. v. Pickett,* 25 Mo. 535; *Newby v. Platte Co.,* 25 Mo. 258; *Pacific R. R. Co. v. Chrystall,* 25 Mo. 544; *Lee v. R. R. Co.,* 53 Mo. 178. The defendants having no permanent or substantial right to the pass-way crossed by plaintiff's railroad, were, therefore, not entitled to any damages on this account, and plaintiff's second instruction should have been given. *Bachelder v. Wakefield,* 8 Cush. 243, 251; *Mulford v. Pratt,* 4 Pick. 222; *Gayetty v. Bethaum,* 14 Mass. 50; *Tickel v. Brown,* 4 Ad. & E. 369; *Hall v. McLeod,* 2 Metc. (Ky.) 98; *Polly v. McCall,* 37 Ala. 20; *Dodge v. McClintock,* 47 N. H. 387; *Holdane v. Coldspring,* 23 Barb. 103; *People v. Jackson,* 7 Mich. 432; *People v. Tilman,* 12 Mich. 400; *Fuhr v. Dean,* 26 Mo. 116; Washburn on Easements, (3 Ed.) 5, 6, 24, 133, 182. A licensee can maintain no action, and is entitled to no damages because his enjoyment is interfered with by a third party. *Commissioners v. Wood,* 10 Pa. St. 97; *Ottawa Gas Co. v. Thompson,* 39 Ill. 598; *Hill v. Tupper,* 2 H. & Colt. 121; *Ackroyd v. Smith,* 10 C. B. 164; Washburn on Easements, 688. The court should have permitted witness Massie to testify as to the admissions of the defendant as to what the defendant considered he was damaged by the railroad, and in what his damages consisted. Massie was not trying to effect a compromise. *Ashlock v. Linder,* 50 Ill. 169; *Springfield v. Schmook,* 68 Mo. 394.

*Comingo & Slover* for respondents

The instructions given by the court cover the whole

case, and correctly declare the settled law of this State on that subject. *Newby v. Platte Co.*, 25 Mo. 258, 505, 515; *Lee v. R. R. Co.*, 53 Mo. 178; *Hannibal Bridge Co. v. Schaubacker*, 57 Mo. 583; *Mississippi Bridge Co. v. Rung*, 58 Mo. 491. The testimony of Massie, offered to prove the statements of Joseph Farrell made at the time Massie was trying to effect a compromise between the appellant and respondents as to the right of way, was inadmissible generally, and especially against the respondent Celia Farrell, the owner of an undivided half of the farm. 2 Whar. Ev., § 1090; *Ferry v. Taylor*, 33 Mo. 323. Appellant's second instruction is not the law, and if it were, there is no evidence in the case to support it. All of the witnesses testified that the lane or passage-way had been, by consent of all the owners of property adjoining it, open to, and used by the public since 1860, and hence is a public highway. *State v. Wells*, 70 Mo. 637; *State v. Culver*, 65 Mo. 607; *State v. Walters*, 69 Mo. 463.

HENRY, J.—This was a proceeding under the statute, to appropriate for right of way for plaintiff's road, a portion of defendants' farm. Commissioners were appointed who allowed defendants $400. They filed exceptions to the commissioners' report, and in March, 1879, there was a trial by jury, who allowed defendants $800, and from the judgment on that verdict, plaintiff has appealed. The following facts were established by the evidence: Defendants' farm consists of sixty-one acres under fence, and lies about one and a quarter miles from the town of Independence, Missouri. The plaintiff's road makes a cut through the land, thirteen feet deep where it enters the land and about nineteen feet deep just north of the dwelling. It is less than fifty feet from the dwelling house to a right of way claimed by defendants, which is the only approach to the house from the public road, and is crossed by plaintiff's road. This approach is a lane which has been used by those owning the lands west of it, and whoever else had

occasion to pass over it, since 1860. An application to the county court of Jackson county to have it declared a public county road, had been refused, and in the language of one of the witnesses, Mr. Proctor, "it had no legal status."

It seems that in 1860, the heirs of Wood Noland owned a tract of land, embracing what is now known as the Higbee tract, and laid it off in eleven lots, six of which, from one to six inclusive, were purchased by Higbee, and by the plat, which was duly acknowledged and recorded by the said heirs, a street forty feet wide was reserved between lots 2, 3, 4 and 5, running to the public road east. Shortly after Higbee purchased his lots, he proposed to Noland, who owned the balance of the lots, and Wm. B. McBride, who owned the land lying west of and adjoining the Noland tract, including the Farrell tract, to close up the street reserved and open one of equal width on the west side of his land between him and Noland and McBride, giving them an out-let to a county road running east and west. They agreed to the change, and it was thus made. Less than one-third of an acre, of defendants' land was taken by the plaintiff for its road. Defendants' damages were variously estimated by their witnesses at from $700 to $1,100. Plaintiff's witnesses testified that defendants had sustained no damage from the construction of the road through their land.

For defendants the court gave the following instruction:

1. In estimating the damage to the land in controversy, the jury will consider the quantity, quality and value of the land taken or damaged by the railroad company, and the damages to the whole tract by reason of the construction of said road and the running of the same through it in the usual and ordinary manner, and deduct from these amounts the benefits, if any, peculiar alone to said tract of land arising from the running of said railroad through the same; and by peculiar benefits to that land, is meant such benefits as that land alone derives from the location of said

road through it, as are not common to the other lands in the same neighborhood.

2. If the jury believe from the evidence that the defendants' farm has been injured by the plaintiff's railroad running through it, but owing to the benefits that said land enjoys in common with other land in the same neighborhood derived from said railroad, the defendants' farm is worth as much or more after said road passes through it as before, and they further believe there are no benefits peculiar to said land, then they will find for the defendants and estimate their damages by considering the value, quantity and quality of land taken by the plaintiff for right of way and the full damages to the whole farm by reason of the construction of said road and the running of the same through it.

3. Although the jury may believe from the evidence that the farm of defendants has been benefited by the location of plaintiff's railroad across it, yet unless they believe from the evidence that said farm enjoyed a special or peculiar benefit not enjoyed in common with other lands in the neighborhood, they will find for the defendants, and assess their damages at such sum as they may believe from the evidence they have sustained by the location and construction of said railroad across their farm, not exceeding the amount claimed by the defendants.

4. If the jury believe from the evidence that the road or lane by which defendant Joseph Farrell has access to the lands described in the petition, reply and exceptions in this cause, has been opened to the public and in the uninterrupted use of the public for the purpose of travel since the year 1861, and that it was opened as such by Chas. Higbee, the then owner of the land on which it is located, or was opened by his request or permission, and used as aforesaid in lieu of the street laid out and designated in the plat of the subdivision of the Noland farm read in evidence and dedicated by said plat as a street, and that said street has, during said time, been inclosed and oc-

cupied by said Higbee and those claiming under him, they are instructed that these facts are sufficient to constitute, and do in law constitute, said road or lane a public highway.

The following asked by plaintiff were refused:

1. In estimating the damages to the land in controversy, the jury will consider the quantity and value of the land taken by the railroad company for a right of way, and the damages to the whole tract by reason of the road running through the same, and deduct from these amounts the benefits, if any, peculiar to said tract, arising from said road; and these benefits are not such as the defendants enjoy in common with their neighbors whose lands are not taken by said plaintiff for its railroad.

2. If the jury believe from the evidence that the passage-way on the east of defendants' place and leading to the public road was formerly a part of the Noland farm and was owned in the latter part of the year 1860 or 1861 by one Higbee, and in the year 1860 or 1861 said Higbee gave permission to one McBride, who then owned the place now owned by defendants, to use the same as an out-let from said defendants' place and the same has since that time and is still so used by the defendants; and if the jury further believe that said Farrell never acquired a title to said passage-way by deed, and the same was not used as a passage-way before April 7th, in the year 1860, then the jury are instructed, that the defendants, Joseph and Celia Farrell, have no right to said passage-way, and the jury will exclude from their estimate of damages to defendants' property, (if they should find that the defendants are damaged,) any consideration of any damages that may accrue to defendants' property by reason of plaintiff's railroad crossing said passage-way.

3. If the jury believe from the evidence that plaintiff left it to the option of defendant Farrell to have a bridge or grade-crossing at the point of intersection of the railroad and the road-way leading to defendants' premises,

and defendants chose a grade-crossing, then defendants are estopped from claiming any extra damage they may have sustained by reason of not having such bridge.

The instructions given and refused present the questions to be determined.

It is a matter of no consequence whether the out-let from defendants' farm to the county road is a street, a public road, or a private right of way. Defendants had acquired a right of way over it, of which neither Higbee, nor any one claiming under him, could have deprived them. It was not a mere parol license, revocable at the pleasure of Higbee, but, for a sufficient consideration, he agreed with Noland and McBride, that they should have, and use it, perpetually, and it has been used by them and their grantees, together with the public, since 1860. Defendants have, therefore, a perfect vested right of way over the land or street, and a just claim for compensation against any one for obstructing it, or otherwise impairing its value as a passage-way. The instruction asked by plaintiff on this subject was properly refused, because the testimony, without any conflict, was as above detailed.

Defendants' first instruction declares that : "By peculiar benefits to that, (defendants',) land is meant, such as it alone derives from the location of said road through it, as are not common to the other lands in the same neighborhood." The plaintiff's is to the same effect, with the addition that "these benefits are not such as the defendants enjoy in common with their neighbors whose lands are not taken by such railroad." Whether plaintiff's instruction should have been given in any case, we are not called upon to determine. If there was any testimony as to the peculiar benefits which defendants' land derived from the location of the road through it, it was not preserved in the bill of exceptions, and we assume that there was none, and for that reason the court might properly have refused the instruction, whether it asserted

*1. ROADS : damages for obstructions.*

*2. INSTRUCTIONS.*

a correct legal principle or not.   The same may be said of defendants' first instruction, so far as it relates to benefits But as there was no evidence on that subject, it did not harm the plaintiff.

Nor did the court err in excluding the testimony of Massie to a conversation between him and Joseph Farrell, in which admissions were made by the latter as to the extent of his damages.  If Farrell understood that Massie was endeavoring to effect a compromise between him and the company, and, under the impression that he was representing the company for that purpose, made the admissions in question, what he may have said stands upon the same ground with respect to its admissibility, as if Massie, in fact, represented the company.

3. ADMISSIONS AS EVIDENCE: compromise.

The court did err in the refusal of plaintiff's third instruction.   The evidence shows that before making a crossing, Clinton, plaintiff's chief engineer, said to Mr. Farrell that the company intended to put a bridge at the crossing; that Farrell objected, and said he wanted a grade-crossing, and thereupon the company proceeded to make such crossing and had it half completed when Farrell changed his mind and demanded a bridge, which the company refused on the ground that it had already incurred considerable expense in the construction of the grade-crossing.   Witnesses for defendants testified that the damages to them was from $200 to $500 greater in consequence of there being a grade-crossing, instead of a bridge, and from the amount of the damages allowed to defendants by the jury, the admission of this evidence, and refusal of the defendants' third instruction, there is no doubt that the jury, in determining the amount of damages, allowed, as an element thereof, the difference to defendants between the grade-crossing and a bridge.   As the grade-crossing was made at Farrell's request, instead of a bridge, which plaintiff intended to erect, any additional damage to defendants resulting to them in consequence of

4. DAMAGES VOLUNTARILY INCURRED.

a grade-crossing having been made there, instead of a bridge, must be borne by them.

In estimating damages to defendants, it must be on the basis that the bridge was actually placed there, instead of the grade-crossing, inasmuch as plaintiff intended to erect a bridge, and only abandoned it on defendants' remonstrance, and made the crossing he desired. Surely they cannot recover damages occasioned by their own acts and conduct. If the company had proposed to run their road at a different place through defendants' land, where they had acquired a right to run it, and, at their solicitation, they had run it on a different route on their land, of defendants' own selection, could they claim damages for any peculiar injury sustained in consequence of the change of location? Would they be heard to say, that, where thus located it is much nearer their dwelling than where the company first proposed to run it, and disturbs their family, and otherwise injures them on account of such proximity? No question of technical estoppel is involved here, but the question is, shall one recover for damages voluntarily incurred by himself?

Nor does it help defendants' case, that after the company had expended a large amount of money in making the grade-crossing and had it half completed, Farrell demanded a bridge instead. While, before the company expended the money and labor, he might have been at liberty to change his mind, and insist upon a bridge, it would be gross. injustice to permit his caprice and vacillation to make the company, not only incur considerable expense, but delay the completion of the road.

All concurring, the judgment is reversed and the cause remanded.